IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2014 APR 16  PM 1: 59

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ KKC
        DEPUTY

WHITE LODGING SERVICES CORPORATION
AND AUSTIN 18 HOTEL, LLC,
                        Plaintiff,

-vs-                                                    Case No.  A-13-CA-825-SS

ANTHONY SNIPES AND THE CITY OF
AUSTIN, TEXAS,
                        Defendant.

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Anthony Snipes and the City of Austin's Motion to Dismiss [#6], Plaintiffs White Lodging Services Corporation and Austin 18, Hotel, LLC's Response [#9], and Defendants' Reply [#10]; Motion for Leave to File Amicus Brief by Workers Defense Project and Save Our Springs Alliance [#11]; Defendants' Unopposed Motion to Extend Deadlines for Rule 26(f) Conference and Proposed Scheduling Order [#12]; and Joint Motion for Extension of Time to File Discovery Plan and Proposed Scheduling Order [#13]. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders DENYING the motion to dismiss.

### Background

The dispute in this case centers around the construction of a hotel in downtown Austin. Plaintiffs White Lodging Services Corporation and Austin 18 Hotel, LLC are the developers of the new convention hotel. In short, Plaintiffs are at loggerheads with the Defendant City of Austin (the

City) over the alleged rescindment of fee exceptions granted to Plaintiffs to construct the hotel, and the enforcement of conditions placed on those fee exceptions requiring Plaintiffs to comply with "prevailing wage policy" during construction of the project.

In 2011, the City and Plaintiffs engaged in a series of discussions concerning economic incentives the City would be willing to provide in order to induce Plaintiffs to develop a new convention hotel in downtown Austin.  These conversations culminated in the Austin City Council passing an ordinance on June 29, 2011 (the Fee Waiver Ordinance), which provided $3.8 million in conditional permit and right-of-way fee waivers to Plaintiffs for the construction of a new downtown convention hotel.  *See* Compl. [#1-1], Ex. A (Fee Waiver Ordinance).

According to Plaintiffs, during the June 29, 2011, meeting, Austin City Councilman Mike Martinez introduced an amendment to the ordinance, which made compliance with the City's "prevailing wage policy" an additional condition for Plaintiffs receiving fee waivers.  Plaintiffs objected to inclusion of this amendment, but the ordinance passed over this objection.  After the meeting, Plaintiffs' representative, Deno Yiankes, asked Martinez for guidance on how to comply with the City's "prevailing wage policy," and Martinez responded by directing Yiankes to Assistant City Manager Rudy Garza, who was in charge of the City's contract management department, for directions on how to comply.

Plaintiffs claim they subsequently learned, through communications with Garza and their own investigation, that the City had no existing "prevailing wage policy" for privately funded construction projects.  According to Plaintiffs, while there is a wage policy in place for federally funded projects, which includes a specific process for obtaining a "Wage and Hour Division Letter" from the U.S. Department of Labor and a defined method for appeals, there was no similar policy

in place for privately funded projects. Because there was no City policy in place governing the calculation, application, appeal, and enforcement of prevailing wage rates with respect to privately funded projects, Plaintiffs assert they relied on Garza—at the direction of Councilman Martinez—to provide guidance on the City's "prevailing wage policy" applicable to the project.

Prior to construction, Plaintiffs provided Garza with proposed wages for different classifications of contractors' employees on the project. Plaintiffs represent their proposed rates would mean most individual trades would be paid a higher hourly rate on the project than the latest published prevailing wage rates for these trades on federally funded projects, but some trades would be paid a lower rate. According to Plaintiffs, if the City had adopted a prevailing wage policy requiring Plaintiffs to pay the latest published prevailing wage rates on a federally funded project, then the increase in construction costs would have far exceeded the value of the fee waivers offered by the City for construction of the hotel.

Garza allegedly approved Plaintiffs' proposed wage schedule, and Plaintiffs commenced design and construction of the hotel. Plaintiffs claim they would not have done so absent Garza's approval and assurances. Soon thereafter, Garza apparently retired as Assistant City Manager, and Defendant Anthony Snipes replaced him. Snipes allegedly reviewed Garza's position on the City's prevailing wage policy concerning the hotel project and rejected it. Snipes advised Plaintiffs of a new policy that would allegedly negate the entire value of the fee waivers Plaintiffs previously negotiated with the City. Plaintiffs represent that by the time Snipes informed them of these new wage requirements, they had already relied to their detriment on Garza's assurances regarding the City's wage policy by entering contracts with building contractors and beginning construction of the

hotel.  According to Plaintiffs, Snipes has refused to honor Garza's prior position and demanded they

pay "back wages" in compliance with wage rates different from those previously approved by Garza.

Furthermore, Plaintiffs claim Snipes and the City have retroactively revoked the fee waivers

and demanded payment of previously waived fees.  It is unclear to the Court whether the City is

demanding payment of the previously waived fees because it believes Plaintiffs have not complied

with the conditions of the Fee Waiver Ordinance by paying "prevailing wage rates" or if the alleged

revocation of the fee waivers is independent of the "prevailing wage policy" dispute.

Based on this series of events, Plaintiffs filed a lawsuit against the City.  First, Plaintiffs

claim the City has revoked vested benefits without due process.  According to Plaintiffs, the City,

at the time it passed the Fee Waiver Ordinance requiring compliance with "the City's prevailing

wage policy," did not have a "prevailing wage policy" for privately funded projects, and the City,

to date, has yet to provide Plaintiffs any rules, regulations, or written procedures which describe such

a policy, including any exceptions, allowed adjustments, enforcement policies, hearing procedures,

or appeal rights.  In addition, Plaintiffs complain the City has now revoked the fee waivers they

relied upon when contracting for construction of the hotel and have done so without any

constitutionally adequate administrative hearing or right of administrative appeal.

In addition to complaining of the revocation of the fee waivers, Plaintiffs resist the City's

attempts to now collect those fees on the ground they are unconstitutional exactions.  Plaintiffs claim

to be the tenant/lessee for the real property on which they are constructing the hotel, and as lessee

claim to have vested property rights in the real property, including any right, title, or interest of the

fee owner of the property to the use of the abutting public right-of-ways during the term of the lease.

This vested property right, according to Plaintiffs, allows them to temporarily encroach on the right-

-4-

of-way for the purpose of construction access and staging.  While Plaintiffs acknowledge the City may reasonably regulate this right-of-way to protect public health, safety, and welfare under its police power, Plaintiffs complains these fees—which would amount to several million dollars—are excessive, unreasonable, arbitrary, and not justified by any legitimate exercise of police power.

Specifically, Plaintiffs have asserted four basic causes of action seeking declaratory and injunctive relief on each.  First, Plaintiffs claim the City has violated or will violate their rights to procedural due process under the Fifth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.  Specifically, Plaintiffs want to prohibit the City from (1) revoking the fee waivers and retroactively changing the City's "prevailing wage policy", and (2) revoking the fee waivers absent the publication of and adherence to written procedures which provide constitutionally adequate notice, opportunity to be heard before an impartial tribunal, and adequate appeal procedures.

Second, Plaintiffs claim the City has violated or will violate their rights to substantive due process under the Fifth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983. Specifically, Plaintiffs claim the right-of-way fees sought by the City are arbitrary and unreasonable, and have no substantial relation to the public health, safety, morals, or general welfare.

Third, Plaintiffs claim the City  has violated or will violate their rights under the Fifth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983 because the fees it seeks to collect are unconstitutional exactions as a condition of Plaintiffs exercising their vested property rights with respect to reasonable construction access and staging on the right-of-way abutting their property.

Fourth, Plaintiffs claim the City has committed or will commit *ultra vires* acts because the right-of-way fees are not authorized by the Austin City Charter or Austin City Ordinances, and/or are prohibited by the Texas Constitution.

The City disputes Plaintiffs' claims and has moved to dismiss them based on Rules 12(b)(1) and 12(b)(6). The City seeks dismissal on a variety of grounds but does not clearly segregate its 12(b)(1) arguments from its 12(b)(6) arguments. The Court has done its best to divide the City's arguments into the two categories. First, the City challenges jurisdiction, arguing the claims are not ripe for review, Plaintiffs lack standing, the City and Snipes are immune from liability, and the Court should decline to exercise jurisdiction based on the *Pullman* abstention doctrine. Second, the City contends Plaintiffs have failed to state a procedural due process claim because they were given due process via a public hearing on August 8, 2013. Plaintiffs have responded, the City has replied, and the motion is ripe for the Court's review.

## Analysis

### I.      Rule 12(b)(1)

### A.      Legal Standard

Because federal courts have limited jurisdiction, a court must dismiss any case if it lacks subject-matter jurisdiction over the claims. FED. R. CIV. P. 12(b)(1); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A party seeking to invoke federal jurisdiction bears the burden of demonstrating the exercise of that jurisdiction is proper. *Rivera-Sanchez v. Reno*, 198 F.3d 545, 546 (5th Cir. 1999). The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A facial attack on a complaint requires the

court to evaluate whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are to be taken as true; however, "a factual attack challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

**B.    Application**

**1.    Ripeness**

The City argues, because Plaintiffs have not paid any amount of the right-of-way fees they assert the City is trying to collect, the claims, at least to the extent they challenge the collection of these fees, are not ripe for review.

Article III of the United States Constitution limits federal courts to deciding only actual cases or controversies. U.S. CONST. art. III, § 2. Courts have therefore developed the justiciability doctrines of standing, mootness, political question, and ripeness, which "all originate in Article III's 'case' or 'controversy' language." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Specifically, the ripeness doctrine also is drawn "'from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

"A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987). "The key considerations are 'the fitness of the issues for judicial decision and the hardship

to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* at 587. "However, 'even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.'" *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)).

In this case, the Court concludes Plaintiffs have sufficiently alleged an imminent injury despite the fact they have apparently not paid any of the disputed right-of-way fees. The events described in the complaint and the City's attempts to collect these fees are not abstract or hypothetical. Indeed, Plaintiffs have alleged Defendant Snipes and the City have retroactively revoked the fee waivers and are demanding Plaintiffs pay these fees. The City has not denied this allegation. Apparently, the parties have agreed the City would not halt the construction of the hotel by prohibiting the use of the right-of-way despite Plaintiffs' refusal to pay the right-of-way fees. *See* Defs.' Mot. Dismiss [#6], at 2 n.1. The parties also agreed to Plaintiffs depositing the amount of money owed in disputed fees into the registry of the Court, or into some other interest-bearing escrow account, although it is unclear if this has actually occurred. *Id.* Nevertheless, it illustrates the City's intent to collect these fees and the imminence of injury Plaintiffs face if these fees are unconstitutional as alleged.[1]

---

[1]The City indicates Plaintiffs have been, and perhaps still are, occupying the right-of-way under a temporary use of right-of-way permit, and although Plaintiffs have not paid for this permit, the City has not instituted any enforcement actions against Plaintiffs as permitted by the Austin City Code. *See* Defs.' Mot. Dismiss [#6], at 3.

Plaintiffs are not required to pay the fees before challenging them as unconstitutional, and seeking declaratory and injunctive relief.  Plaintiffs' claims regarding the City's collection of right-of-way fees previously waived are ripe for review.

### 2.    Standing

The City also contends Plaintiffs lack standing to challenge the right-of-way fees.  The standing requirements of Article III simply require the following:

> "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural or hypothetical."  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'  Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*United States v. Windsor*, 133 S. Ct. 2675, 2685–86 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

### a.    The Parties' Respective Rights in the Streets of Austin

The City's standing arguments essentially challenge whether Plaintiffs have a "legally protected interest" at stake in the property, which would give them standing to challenge the fees.  But in characterizing Plaintiffs' complaint, the City sets up strawman contentions, which do not accurately represent Plaintiffs' position.  In particular, the City understands Plaintiffs to be "challeng[ing] the City's authority to charge them any amount (a single cent) for encroachment upon and temporary use of the City's right-of-way in the public streets of the City of Austin."  *See* Defs.' Mot. Dismiss [#6], at 1.  Under this view, the City seems to think Plaintiffs are arguing the City has either no property interests or inferior property interests to those of Plaintiffs.  Plaintiffs, however,

are not contending the City has no rights in the public streets, nor are they contending the City has no right to exact fees. To the contrary, Plaintiffs acknowledge in their complaint that the City may charge fees under its police power. *See* Compl. [#1], ¶ 24 (conceding Plaintiffs' property right allowing them to temporarily encroach on the right-of-way for the purpose of construction access and staging is "subject to reasonable police power regulations to protect public health, safety and welfare"). Plaintiffs are not challenging the City's authority to charge them any amount at all, but rather are alleging the fees the City seeks to collect in this case are "excessive, unreasonable, arbitrary and not justified by any legitimate exercise of police power." *Id.*, ¶ 24. Moreover, Plaintiffs are challenging the collection of fees in this case on the additional ground the City previously waived these fees and has now revoked the waiver without due process.[2]

Having clarified the actual dispute at issue, the parties do not appear to disagree that owners of property abutting streets in Austin have fee title to the center of the street subject to the reservations, rights, privileges, and easements of the City. Moreover, the parties do not seem to dispute that abutting owners have a right to reasonable and necessary use of the right-of-way for temporary storage of building materials during construction. Finally, the parties do not seem to

---

[2]Concerning what process exists for the granting of fee waivers and their revocation, the Court is unclear. Furthermore, the Court is not sure whether any process or state remedies were pursued by Plaintiffs prior to filing this lawsuit. The City requests the Court decline to exercise jurisdiction and allow a state court to preside over an inverse condemnation proceeding. *See* Defs.' Mot. Dismiss [#6], at 13. Alternatively, the City indicates it would be willing to provide a method for Plaintiffs to make arguments and offer evidence in an administrative proceeding before the City. *Id.* at 13–14. Plaintiffs counter that § 1983 plaintiffs are not generally required to exhaust state judicial or administrative remedies, any exhaustion requirement is left to this Court's discretion, and the "denial of just compensation" requirement has been held inapplicable to injunctive and declaratory claims concerning purely monetary exactions. *See* Pls.' Resp. [#9], at 6–7. Based on the parties' briefing, the Court cannot discern what process exists and whether it has been exhausted. Moreover, the Court notes generally exhaustion of state remedies is not required for § 1983 litigation. *See Monroe v. Pape*, 365 U.S. 167, 183 (1961) (finding exhaustion of state judicial remedies unnecessary); *McNeese v. Bd. of Educ.*, 373 U.S. 668, 671 (1963) (finding exhaustion of state administrative remedies unnecessary). For now, the Court finds Plaintiffs' allegation that the fees were revoked without due process sufficient to withstand the City's motion to dismiss.

dispute the City has some degree of authority to charge fees for temporary use of the right-of-way. Where the parties diverge is over whether the fees at issue in this care fall within this authority. The Court does not decide that issue at this time, but merely finds property owners do have standing to challenge temporary use of right-of-way fees imposed by the City.

      **b.**      **Whether Tenants have Standing**

The next question becomes whether Plaintiffs, as the lessee of the property, "stand in the shoes" of the property owners and hold the same right to challenge these fees. The City suggests there is at least an "issue of whether Plaintiffs, who are admittedly the 'developer' and 'tenant' of the private property abutting city streets possess standing to bring any claim based on real property interests [held by the property owner]." Defs.' Mot. Dismiss [#6], at 5. Plaintiffs respond that leasehold interests have been recognized as a protected property right under the Constitution. *See Alamo Land & Cattle Co., Inc. v. Arizona*, 424 U.S. 295, 303 (1976). Plaintiffs also contend Texas law recognizes leasehold interests as constitutionally protected property rights. *See, e.g., State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 873 (Tex. 2009); *Motiva Enters., LLC v. McCrabb*, 248 S.W.3d 211, 214 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

In their complaint, Plaintiffs allege Austin 18 Hotel is the tenant under a 99-year ground lease of real property abutting the right-of-ways in question, and as lessee it holds "any right, title or interest of the fee owner of the property to the use of the abutting public right-of-ways during the terms of the lease." Compl. [#1], ¶ 21. The Court concludes Plaintiffs' allegations are sufficient to place them in the shoes of the property owners and to withstand the City's suggestion there may be an issue of standing because Plaintiffs are the lessee, not the actual property owner. The City is seeking these fees from the Plaintiffs, and the Plaintiffs stand to suffer injury in the form of these

fees and potential delays to their construction project.  As such, Plaintiffs have standing to oppose these fees.

### c.     Whether Property Owners with Subservient Rights have Standing

The City also contends the Plaintiffs do not have standing because property owner's rights in abutting streets are "subservient" to the City's rights as holder of a public easement in the streets. *See* Defs.' Mot. Dismiss [#6], at 11.  Taking this proposition as true, the Court fails to see how having a "subservient" right equals a lack of standing.  Certainly the City is not suggesting it can charge whatever fee it pleases, and the property owner with a "subservient" right has no standing to oppose said fee.  The Court rejects this argument.

In sum, Plaintiffs' allegations sufficiently establish they have standing to challenge the fees the City is purporting to collect.

### 3.     Immunity

The City argues it and Defendant Snipes are immune from suit and liability because "[g]enerally, cities are immune from suit for their governmental functions." *See* Defs.' Mot. Dismiss [#6], at 7–8 (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006)).  The Court fails to see how *Tooke* is applicable and supplies a basis for invoking immunity in this case considering it involved the City of Mexia's use of immunity in a breach of contract case brought against it in state court. *Tooke*, 197 S.W.3d at 329.  The Supreme Court of Texas explained in *Tooke* that when a governmental unit enters into a contract, it waives immunity from liability, but it does not waive immunity from suit. *Id.* at 332.

This case, however, is not a breach of contract claim brought in state court but rather is essentially a constitutional and § 1983 claim brought in federal court.  Qualified immunity is not

available in § 1983 cases against municipalities and against individuals where injunctive relief is

sought instead of or in addition to damages. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009)

(citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

Therefore, the City fails to explain why it is entitled to an immunity defense, and the Court

denies this ground for dismissing the case.[3]

### 4.     *Pullman* Abstention

The City alternatively requests the Court decline to exercise jurisdiction under the *Pullman*

abstention doctrine.  Where state law is uncertain and a clarification of state law might make a

federal court's determination of a constitutional question unnecessary, the federal court should

abstain until the state court has had an opportunity to resolve the uncertainty as to the state law. *R.R.*

*Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500–01 (1941).  Abstention is the exception, not the

rule. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

In the instant case, the City contends this case would require the Court to make preliminary

determinations of state law before reaching any of Plaintiffs' constitutional claims, and Plaintiffs'

constitutional claims present unique questions involving state law.  The Court declines to apply the

*Pullman* doctrine in this case.  First, as described above in Part B(II)(a), the Court does not think the

parties disagree as to the state law issues in this case as much as the City suggests.  Second, the mere

fact the Court may have to make determinations of state law—a task the federal courts engage in

routinely—does not mean the Court should abstain from handling a case.  The Court does not think

---

[3] The City also references the Texas Tort Claims Act to suggest it has not waived immunity in this case, but Plaintiffs have not asserted any tort actions in their complaint.

this case represents the sort of exceptional circumstances where *Pullman* abstention would be appropriate, and the Court denies the City's request.

## II.     Rule 12(b)(6)

## A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*  Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and

-14-

common sense." *Id.* at 679.  In deciding a motion to dismiss, courts may  consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.      Application**

As noted above, the City did not clearly separate its 12(b)(1) arguments from its 12(b)(6) arguments, and some of them overlap.  Consequently, some of the 12(b)(6) arguments have already been addressed above, but the Court here addresses the City's contention that Plaintiffs' procedural due process claim fails because they received such process in the form of a public hearing on August 8, 2013.

The City contends the temporary use of right-of-way fees and the City's interpretation of the Fee Waiver Ordinance from June 29, 2011, was the subject of a public hearing on August 8, 2013, at which Plaintiffs' corporate representative and lawyer each spoke on behalf of Plaintiffs' position.  Plaintiffs contend this meeting did not satisfy procedural due process and did not negate Plaintiffs' allegation there is a lack of written policies or procedures to administer the fee waiver ordinance and a lack of a constitutionally adequate administrative hearing or right of appeal with respect to the revocation of such waivers.   According to Plaintiffs, the hearing on August 8, 2013, merely considered an ordinance to amend the Fee Waiver Ordinance to provide greater clarity, and the City Council did not consider the revocation of Plaintiffs' past fee waivers under the Fee Waiver Ordinance.

At this stage, the Court finds sufficient Plaintiffs' allegation there is no established process in place for revoking fee waivers and for retroactively changing the "prevailing wage policy" as

Plaintiffs allege.  The Court does not decide today whether the meeting on August 8, 2013, satisfied due process requirements.

### III.   Motion for Leave to File Amicus Brief by Workers Defense Project and Save Our Springs Alliance

The Workers Defense Project and the Save Our Springs Alliance filed a motion for leave to file an amicus brief in this case in support of the City.  Plaintiffs have not filed any response in opposition to this motion.  Because the Court sees no reason to deny this motion for leave, it is GRANTED.  The Court has reviewed and considered the amicus brief in issuing this order.

### IV.   Motions for Extension of Time

During the pendency of the motion to dismiss, the parties have been negotiating the proposed scheduling order and discovery plan.  The City originally filed an Unopposed Motion to Extend Deadlines for Rule 26(f) Conference and Proposed Scheduling Order [#12], requesting ten days following the City's deadline for filing an answer following the Court's ruling on their motion to dismiss.

The parties later filed a Joint Motion for Extension of Time to File Discovery Plan and Proposed Scheduling Order [#13], in which they informed the Court they conducted their Rule 26(f) on March 19, 2014.  They requested additional time to file the proposed discovery plan and scheduling order, and on April 9, 2014, they filed their proposed scheduling order and discovery plan.

Since the parties already conducted the Rule 26(f) Conference and submitted a proposed discovery plan and scheduling order, there is no longer any need for any extensions of time for these matters.  Therefore, the Court DISMISSES AS MOOT both motions.

**Conclusion**

Having read the parties' pleadings and briefs, the Court is not entirely clear on the nature of this case but concludes dismissal is inappropriate at this stage of the litigation. In sum, it appears the City offered Plaintiffs a $3.8 million incentive to construct a downtown hotel with the condition, among others, Plaintiffs pay workers on the project in compliance with the City's "prevailing wage policy." What seemed like a good deal for all turned sour when the parties realized there was no such policy in place. Plaintiffs feel they are paying more-than-fair wages in compliance with the Fee Waiver Ordinance and consistent with their negotiations with City officials. The City apparently disagrees and seeks payment of the fees. Plaintiffs resist the City's attempts to retroactively alter the meaning of its "prevailing wage policy" and collect fees without due process. Moreover, Plaintiffs challenge the fees on substantive due process grounds. The Court finds Plaintiffs' allegations are sufficient to survive the Rule 12 stage, and DENIES the City's motion to dismiss.

Accordingly,

IT IS ORDERED that Defendants Anthony Snipes and the City of Austin's Motion to Dismiss [#6] is DENIED;

IT IS FURTHER ORDERED that the Motion for Leave to File Amicus Brief by Workers Defense Project and Save Our Springs Alliance [#11] is GRANTED;

IT IS FURTHER ORDERED that Defendants' Unopposed Motion to Extend Deadlines for Rule 26(f) Conference and Proposed Scheduling Order [#12] is DISMISSED AS MOOT;

IT IS FINALLY ORDERED that the Joint Motion for Extension of Time to File

Discovery Plan and Proposed Scheduling Order [#13] is DISMISSED AS MOOT.

SIGNED this the _16th_ day of April 2014.


SAM SPARKS
UNITED STATES DISTRICT JUDGE